**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

RYAN D. MADORE, on behalf of M.R.M. and G.J.M.,

                                   Plaintiffs,                  5:25-cv-00095 (BKS/MJK)

v.

SALVATORE A. PAVONE, ESQ., DAVID M. PRIMO,
ESQ., and HON. CHRISTINA F. DEJOSEPH,

                                   Defendants.
_____

**Appearances:**
*Plaintiff Pro se:*
Ryan David Madore
Fayetteville, NY 13066

*For Defendants:*
Letitia James
Attorney General for the State of New York
Elizabeth Lombardi
Assistant Attorney General, of Counsel
300 S. State Street, Ste. 300
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiff pro se Ryan David Madore brings this action under 42 U.S.C. § 1983 against

Defendants Salvatore Pavone, Esq., David M. Primo, Esq., and Onondaga County Family Court

Judge Christina F. DeJoseph. Plaintiff alleges violations of his and his children's rights under the

United States Constitution in connection with Onondaga County Family Court proceedings.

(Dkt. No. 1).[1] Plaintiff seeks the restoration of "father/son" rights, the return of his "biological children being unlawfully alienated[,]" and the imposition of a "penalty[,]" "fine[,] and imprisonment[.]" (*Id.* at 14-15). Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). (Dkt. No. 11). The motion is fully briefed. (Dkt. Nos. 11-2, 14, 16).[2] Also before the Court is Plaintiff's second motion to appoint counsel. (Dkt. No. 10). For the reasons that follow, Defendants' motion to dismiss is granted, and Plaintiff's motion to appoint counsel is denied as moot.

## II.    BACKGROUND[3]

Plaintiff's claims arise out of a series of family court proceedings and orders in Onondaga County Family Court, pertaining to the custody and visitation of his children M.R.M. and G.J.M. (*See* Dkt. No. 1). The Complaint is difficult to follow, but it appears that most of the relevant proceedings took place before Salvatore Pavone, Esq., "acting in his official capacity as [ ] appointed attorney referee[,]" (*id.* at 3-9), and Onondaga County Family Court Judge Christina F. DeJoseph, (*id.* at 8-12).

On November 23, 2016, Pavone presided over a custody proceeding involving Plaintiff and M.R.M. (Dkt. No. 1, at 7). "[T]he court[-]appointed attorney assigned to represent [Plaintiff]

---

[1] Plaintiff asserts violations of the Second, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution. (Dkt. No. 1). Plaintiff also appears to invoke the New York State Constitution. (*Id.*).

[2] Plaintiff also filed a sur-reply to Defendant's motion to dismiss without seeking the Court's leave, in violation of L.R. 7.1(a)(1). (*See* Dkt. No. 18). All parties, including pro se litigants, must follow the Court's local rules. Nevertheless, in light of Plaintiff's pro se status, and out of an abundance of caution, the Court has considered Plaintiff's sur-reply.

[3] The facts are drawn from the Complaint, (Dkt. No. 1), and Plaintiff's responses to Defendants' motion to dismiss, (Dkt. Nos. 14, 18). *See DeRocha v. Linstruth*, No. 18-cv-1052, 2019 WL 5596252, at *1 n.1, 2019 U.S. Dist. LEXIS 188017, at *3 (N.D.N.Y. Oct. 30, 2019) ("The mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss . . . to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint."). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

in [his] visitation/custody case relieved himself minutes prior to [the] proceedings[,]" and Plaintiff proceeded without counsel. (*Id.* at 7, 11). Plaintiff lost custody of M.R.M as a result of that proceeding. (*Id.*).

Years later, on July 13, 2023, Pavone "proposed an order to suspend [Plaintiff's] parenting time, pending further order by [the] court." (*Id.* at 8-9). Plaintiff appears to allege that Judge DeJoseph stopped Pavone's proposed orders. (*Id.* at 8). On September 7, 2023, Pavone issued an Emergency Order to Show Cause, which was "received and processed" by David Primo, Chief Clerk for the Onondaga County Family Court. (Dkt. Nos. 1, at 8; 18-1, at 21-22). Plaintiff alleges Pavone issued a temporary order that required Plaintiff to stay away from M.R.M. (Dkt. No. 1, at 9). [4] "Plaintiff was not informed of [the] proceedings and was not present[.]" (*Id.* at 5). On February 28, 2024, a "fact finding and disposition" occurred, and a two-year full stay away order of protection was issued "by default." (*Id.* at 6). On March 21, 2024, Primo wrote Plaintiff a letter responding to Plaintiff's request for a transcript of the February 28, 2024 proceedings, and enclosing the forms and instructions for ordering the transcript. (*Id.* at 9-10).

On June 17, 2024, Plaintiff filed a petition for violation of his custody and visitation orders. (Dkt. Nos. 1, at 12; 18-1, at 73). On August 12, 2024, Plaintiff also filed a notice of motion for "emergency judicial relief" in Onondaga County Family Court, asserting that that he was facing "retaliat[i]on for [ ] filing a petit[i]on with NY Onondaga County Family Court alleging numerou[s] civil rights violations by multiple New York State Fam[i]ly Court Officers." (Dkt. No. 1, at 12). On September 16, 2024, Judge DeJoseph dismissed both Plaintiff's June 17,

---

[4] Plaintiff attached a copy of a September 14, 2023 temporary order of protection pertaining to M.R.M to his sur-reply. (*See* Dkt. No. 18-1, at 23-24). That temporary order was not signed by Pavone. (*See id.* at 24). While not referenced in the Complaint, Plaintiff also attached a copy of an order of protection dated September 21, 2023, directing him to stay away from G.J.M. (*Id.* at 41-42).

2024 petition and August 12, 2024 motion. (*Id.* at 12; *see also* Dkt. No. 18-1, at 73). On September 23, 2024, Plaintiff filed a petition for an order of protection, which was dismissed on September 25, 2024. (Dkt. No. 1, at 12-13). Also on September 23, 2024, Plaintiff filed a petition for modification of his custody and visitation orders, along with another petition for violation. (*Id.*). Those petitions were also dismissed. (Dkt. Nos. 1, at 12-13; 18-1, at 79).

## III.    DISCUSSION

### A.    Claims on behalf of M.R.M. and G.J.M.

As a preliminary matter, Defendants contend that any claims Plaintiff asserts on behalf of his minor children must be dismissed, because Plaintiff, a non-attorney, may not represent his children. (Dkt. No. 11-2, at 13-14). The Court agrees that Plaintiff cannot represent his children. *See Cheung v. Youth Orchestra Found.*, 906 F.2d 59, 61 (2d Cir. 1990) ("[A] non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child[.]"))); *Berrios v. New York City Hous. Auth.*, 564 F.3d 130, 135 (2d Cir. 2009). To the extent Plaintiff seeks to proceed with claims on behalf of his children he must obtain an attorney to represent the children in this case. If a notice of appearance is not filed by counsel within thirty days of this Decision and Order, the claims of M.R.M. and G.J.M. will be dismissed without prejudice.

### B.    Motion to Dismiss – Rules 12(b)(1) and 12(b)(6)

Defendants argue that the Complaint must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, because Plaintiff's claims are barred (1) against Defendants in their official capacity by the Eleventh Amendment, (2) by the doctrine of judicial immunity, and (3) by the *Rooker-Feldman* doctrine. (Dkt. No. 11-2, at 14-21). However, "[a] defense of absolute judicial immunity or quasi-judicial immunity has nothing to do with a federal court's jurisdiction." *Wang v. Delphin-Rittmon*, 664 F. Supp. 3d 205, 216-218 (D. Conn. 2023) ("As a

leading treatise recognizes, '[t]he defense of qualified or judicial immunity has also been held to be properly raised via Rule 12(b)(6) rather than Rule 12(b)(1), although one can find courts not being too particular about the distinction.'" (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.))); *Nevada v. Hicks*, 533 U.S. 353, 373 (2001) ("There is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction[.]"). Therefore, Defendants' motion to dismiss under the doctrine of judicial immunity is properly considered under the Rule 12(b)(6) standard. *See also Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020) ("Because [the plaintiff]'s claims against [the defendant judge] are barred by absolute judicial immunity, they were correctly dismissed under Rule 12(b)(6).").

> 1.    **Standard**

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3, 2021 U.S. Dist. LEXIS 209018, at *8 (N.D.N.Y. Oct. 29, 2021) (citation omitted). A motion to dismiss based on an abstention doctrine is considered a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), *City of New York v. Milhelm Attea & Bros.*, Inc., 550 F. Supp. 2d 332, 341 (E.D.N.Y. 2008), as is a motion to dismiss under the *Rooker-Feldman* doctrine, *Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263, 273 (S.D.N.Y. 2018). A district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true[] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). The Court may also "refer to

evidence outside the pleadings" and "take judicial notice of documents in the public record, including state court filings." *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140, 2021 WL 2142924, at *2, 2021 U.S. Dist. LEXIS 99456, at *5 (N.D.N.Y. May 26, 2021) (citations omitted).

      To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

      The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

### 2.    Subject Matter Jurisdiction

#### a.    Eleventh Amendment Immunity

      The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against their own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be

construed to extend to any suit in law or equity, commenced or prosecuted against one of the

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.");

*Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S.

261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Eleventh

Amendment immunity is lost only if Congress unequivocally abrogates states' immunity, or a

state expressly consents to suit. *Gollomp v. Spitzer,* 568 F.3d 355, 365-66 (2d Cir. 2009). It is

well-settled that Congress did not abrogate states' immunity through 42 U.S.C. § 1983, *see*

*Quern v. Jordan*, 440 U.S. 332, 332-45 (1979), and that New York State has not waived its

sovereign immunity from Section 1983 claims, *see Nolan v. Cuomo*, No. 11-cv-5827, 2013 WL

168674, at *7, 2013 U.S. Dist. LEXIS 6680, at *21 (E.D.N.Y. Jan. 16, 2013) (citing *Trotman v.*

*Palisades Interstate Park Comm'n,* 557 F.2d 35, 39–40 (2d Cir.1977)).

　　　The Eleventh Amendment also bars suits for damages against state officials acting in

their official capacities. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (a claim for damages

against state officials in their official capacity is considered to be a claim against the State and is

therefore barred by the Eleventh Amendment); *Ying Jing Gan v. City of New York*, 996 F.2d 522,

529 (2d Cir. 1993) ("To the extent that a state official is sued for damages in [their] official

capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke

the Eleventh Amendment immunity belonging to the state."). Claims against the New York

Unified Court System and its members are likewise barred by the Eleventh Amendment. *See*

*Gollomp*, 568 F.3d at 365-68 (holding that the New York Unified Court System is an "arm of the

State" within meaning of Eleventh Amendment sovereign immunity doctrine and affirming

dismissal of § 1983 claim).

Defendants assert that Plaintiff's claims against Defendants in their official capacity are barred by the Eleventh Amendment. (*See* Dkt. No. 11-2, at 14-16). The Court agrees. Plaintiff names all three Defendants in their official capacities as part of the Onondaga County Family Court, (*see* Dkt. No. 1, at 1-3, 8), which is part of the New York Unified Court System, *see Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 19-cv-1288, 2020 WL 3503158, at *7, 2020 U.S. Dist. LEXIS 114355, at *16 (N.D.N.Y. June 29, 2020) (recognizing county family court as part of the New York Unified Court System (citing N.Y. Const. Art. VI, §§ 1, 13)). Because Plaintiff alleges that Defendants violated his rights while acting in their official capacities, to the extent that Plaintiff seeks monetary damages against Defendants, his claims are barred by the Eleventh Amendment. *See Graham*, 473 U.S. at 169; *Walker*, 2020 WL 3503158, at *7, 2020 U.S. Dist. LEXIS 114355, at *16-17 (dismissing claims against county family court judge in her official capacity as barred under the doctrine of sovereign immunity); *Weinstein v. Bogacz*, No. 07-cv-1259, 2007 WL 9724303, at *2, 2007 U.S. Dist. LEXIS 114234, at *4 (E.D.N.Y. Sept. 25, 2007) (dismissing official capacity claims against family court attorney referee as prohibited under the Eleventh Amendment), *aff'd,* 320 F. App'x 56 (2d Cir. 2009); *Casaburro v. Giuliani*, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (dismissing official capacity claims against County Clerk as barred on Eleventh Amendment grounds). Therefore, Defendants' motion to dismiss Plaintiff's claims against Defendants in their official capacity is granted, without prejudice,[5] for lack of subject matter jurisdiction.

---

[5] *See Karupaiyan v. New York*, No. 23-1257-cv, 2024 WL 2174272, at *2, 2024 U.S. App. LEXIS 11740, at *5 (2d Cir. May 15, 2024) (remanding with instructions to modify judgment where court erroneously dismissed claims against State of New York with prejudice; "because the district court lacked jurisdiction over the claims against the State of New York, it was erroneous to dismiss those claims with prejudice rather than without prejudice").

### b.    *Rooker-Feldman* Doctrine

"Under the *Rooker-Feldman* doctrine, federal district and circuit courts lack subject-matter jurisdiction over cases that are essentially 'appeals from state-court judgments.'" *Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 540 (E.D.N.Y. 2013) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir.2005)), *aff'd*, 560 F. App'x 6 (2d Cir. 2014). The *Rooker-Feldman* doctrine bars federal claims "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)); *see also Hoblock*, 422 F.3d at 84-85. The underlying principle of the *Rooker-Feldman* doctrine is that "within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock*, 422 F.3d at 85.

There are four "requirements" that must be satisfied before *Rooker-Feldman* applies: (1) the "federal-court plaintiff must have lost in state court," (2) the plaintiff "must complain of injuries caused by a state-court judgment," (3) the plaintiff "must invite district court review and rejection of that judgment," and (4) the state-court judgment "must have been rendered before the district court proceedings commenced." *Green*, 585 F.3d at 101 (citing *Hoblock*, 422 F.3d at 85) (internal quotation marks and brackets omitted). "In the child custody context, in order to satisfy this substantive requirement, a plaintiff must be 'plainly' seeking to 'repair [ ] to federal court to undo the [Family Court] judgment.'" *McKnight v. Middleton*, 699 F. Supp. 2d 507, 515 (E.D.N.Y. 2010) (quoting *Green*, 585 F.3d at 102), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). As such, "*Rooker-Feldman* does not apply to [a p]laintiff's claims that only seek monetary damages or prospective injunctive relief and do not seek to overturn a child custody award." *Id.*

Here, Defendants argue that Plaintiff's request for this Court to return his children and "[r]estore father/son, God given, inalienable rights" is barred by the *Rooker-Feldman* doctrine. (Dkt. No. 11-2, at 19-21). The Court agrees. The allegations in the Complaint, coupled with the court orders separately filed by Plaintiff, make it clear that Plaintiff lost custody as a result of an Onondaga County Family Court order, (see Dkt. No. 1, at 7, 11-13), and that he was (or is) prevented from seeing his children because of state court orders of protection, (*see* Dkt. Nos. 1, at 5-6, 8-9; 18-1, at 21-26, 39-42). Plaintiff also concedes, while "[a]ddressing [the] *Rooker*[-]*Feldman* Doctrine" in his response brief, that "the court judgments were all rendered prior to commencement of this proceeding." (Dkt. No. 14, at 6).

Plaintiff has clearly "lost in state court," and complains of injuries caused by state court judgments. *See Green*, 585 F.3d at 101. Plaintiff also, in seeking injunctive relief, invites review and rejection of those judgments, which were rendered before the instant proceedings commenced. *See id.* Therefore, Plaintiff's requested injunctive relief must be dismissed for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine, without prejudice. *See Voltaire v. Westchester Cnty. Dep't of Soc. Servs.*, No. 11-cv-8876, 2016 WL 4540837, at *9, 2016 U.S. Dist. LEXIS 116409, at *28-29 (S.D.N.Y. Aug. 29, 2016) (holding *Rooker-Feldman* barred plaintiff's federal claims where Plaintiff "lost in state court when her parental rights were terminated," complained of injury "by alleging that the state judgment violated her federal due process rights as a parent," and sought "vacatur of the order terminating her parental rights" "and/or damages to remedy injury resulting from it") (collecting cases); *Rotering v. Amodeo*, No. 07-4357-cv, 2009 WL 579138, at *2, 2009 U.S. App. LEXIS 4966, at *6 (2d Cir. Mar. 6, 2009) (affirming district court dismissal for lack of subject matter jurisdiction pursuant to *Rooker-Feldman* doctrine where plaintiff "called upon the district court to overturn an injurious state-

10

court judgment" and "failed to present any independent claim based on an injury that was not caused by the state-court judgment denying his [ ] petition").

### 3.    Judicial Immunity

Defendants argue that Plaintiff's Complaint must be dismissed against all Defendants under the doctrine of judicial immunity. (Dkt. No. 11-2, at 16-19). "'[J]udges generally have absolute [judicial] immunity from suits for money damages for their judicial actions,' but not for actions taken in an administrative, legislative, or executive capacity." *Kellogg v. Nichols*, 149 F.4th 155, 159 (2d Cir. 2025) (quoting *Bliven v. Hunt*, 579 F.3d 204, 209-10 (2d Cir. 2009)). "In determining whether an act by a judge is 'judicial,' thereby warranting absolute immunity," a court must "take a functional approach, for such 'immunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches.'" *Id.* "Generally speaking, 'acts arising out of, or related to, individual cases before the judge are considered judicial in nature.'" *Id.* (quoting *Bliven*, 579 F.3d at 210). "Judicial immunity is so broad that judges and referees 'are not liable to civil actions for their judicial acts, even when such acts . . . are alleged to have been done maliciously or corruptly.'" *Topolski v. Wrobleski*, No. 13-cv-0872, 2014 WL 2215761, at *3, 2014 U.S. Dist. LEXIS 73031, at *11 (N.D.N.Y. May 29, 2014) (quoting *Stump v. Sparkman,* 435 U.S. 349, 356 (1978)). Absolute judicial immunity can only be overcome if: (1) the act is not taken in the judge's judicial capacity, or (2) the act, "though judicial in nature, [is] taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

"[A] court appointed referee is similarly entitled to absolute immunity for [their] official acts." *Topolski*, 2014 WL 2215761, at *3, 2014 U.S. Dist. LEXIS 73031, at *10 (quoting *Renner v. Stanton,* No. 13-cv-01676, 2013 WL 1898389, at *3, 2013 U.S. Dist. LEXIS 65015, at *7 (E.D.N.Y. May 7, 2013)). Judicial immunity "also applies to government officials, including

11

clerks of court and other court employees, for their acts that assist a judge in the performance of [their] judicial duties." *Mendez v. Johnson*, No. 22-cv-6811, 2022 WL 3587600, at *2, 2022 U.S. Dist. LEXIS 150562, at *5 (S.D.N.Y. Aug. 22, 2022). "A court's inherent power to control its docket is part of its function of resolving disputes between the parties," and court staff have absolute immunity for actions taken in furtherance of that judicial function. *Rodriguez v. Weprin*, 116 F.3d 62, 66–67 (2d Cir. 1997) (holding that court clerks were entitled to immunity for claim that they failed "to properly manage the court calendar," resulting in delay in scheduling an appeal). "Court clerks enjoy absolute immunity even for administrative functions if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court." *Humphrey v. Ct. Clerk for the Second Cir.*, No. 508-cv-0363, 2008 WL 1945308, at *2, 2008 U.S. Dist. LEXIS 35912, at *8 (N.D.N.Y. May 1, 2008) (citing *Rodriguez*, 116. F.3d at 67); *Topalski*, 2014 WL 2215761, at *5, 2014 U.S. Dist. LEXIS 73031, at *17 ("Where a clerk [ ] acts 'pursuant to the established practice of the court,' [they are] entitled to absolute immunity." (quoting *McKnight*, 699 F. Supp. 2d at 507)).

The family court orders challenged by Plaintiff were clearly issued by Pavone and Judge DeJoseph from the bench, while they were presiding over Plaintiff's custody and visitation matters.[6] (*See generally* Dkt. No. 1). Pavone and Judge DeJoseph are therefore entitled to

---

[6] To the extent that Plaintiff contends, by arguing that Pavone held "unlawful proceedings," (*see* Dkt. No. 1, at 7), that Pavone acted outside of his jurisdiction, Defendants correctly observe that "[t]he scope of the judge's jurisdiction must be construed broadly, such that a court acts in the absence of all jurisdiction only when it does not have any statutory or constitutional power to adjudicate the case." (Dkt. No. 11-2, at 17-18 (quoting *Gerken v. Gordon*, 24-cv-00435, 2024 WL 4608307, at *9, 2024 U.S. Dist. LEXIS 196645, at *22 (N.D.N.Y. Oct. 29, 2024))). *See also Mendez*, 2022 WL 3587600, at *2, 2022 U.S. Dist. LEXIS 150562, at *5 (noting "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge"). The Complaint does not allege any facts supporting a plausible inference that Pavone acted "in the absence of all jurisdiction." The fact that some of Defendants' actions were taken while Plaintiff was not present does not change the Court's analysis. *See Bliven*, 579 F.3d at 210 ("The fact that a proceeding is informal and *ex parte* has not been thought to imply that an act otherwise within a judge's lawful jurisdiction was deprived of its judicial character." (internal quotations and citation omitted)).

absolute judicial immunity for those acts. *See Carley v. Lawrence*, 24 F. App'x 66, 67 (2d Cir. 2001) (*"Plaintiff's claims against Judge Lawrence are based upon orders that he issued from the bench while presiding over a matter in Family Court. Such orders qualify as judicial acts. Therefore, Judge Lawrence is entitled to absolute immunity for those acts."*). To the extent that Plaintiff alleges any claim for monetary damages against Pavone and Judge DeJoseph in their individual capacities that is not otherwise barred by *Rooker-Feldman*, such a claim is therefore barred by the doctrine of judicial immunity.

With respect to Primo, Plaintiff's factual allegations are sparse; Plaintiff alleges Primo "processed" an Emergency Order to Show Cause, and that Primo sent Plaintiff a letter with the forms and instructions to enable Plaintiff to obtain a transcript of the February 28, 2024 hearing. (*See* Dkt. No. 1, at 8, 10). These were "acts arising out of, or related to," Plaintiff's individual Onondaga County Family Court cases to "assist" the Family Court judges "in the performance of [their] judicial duties[.]" *See Mendez*, 2022 WL 3587600, at *2-3, 2022 U.S. Dist. LEXIS 150562, at *5-6. Primo was entitled to immunity for processing a court order and providing Plaintiff with the court's forms and instructions for ordering a transcript. *See Rodriguez*, 116 F.3d at 66–67; *Humphrey*, 2008 WL 1945308, at *2, 2008 U.S. Dist. LEXIS 35912, at *8; *Topalski*, 2014 WL 2215761, at *5, 2014 U.S. Dist. LEXIS 73031, at *17. Therefore, Plaintiff's claims against Primo must also be dismissed, because Primo is also entitled to absolute judicial immunity. *Mendez*, 2022 WL 3587600, at *2-3, 2022 U.S. Dist. LEXIS 150562, at *5-6 (dismissing claims against judge, clerk, and chief clerk where claims arose "from actions taken with respect to a case before" before the judge in city court; plaintiff "fail[ed] to allege any facts

showing that these defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction").[7]

## IV.    LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2) a court should freely give leave to amend "when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Under Rule 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). A court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023). A request to amend is futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, the Eleventh Amendment, *Rooker-Feldman* doctrine, and judicial immunity issues cannot be cured by better pleading. The claims for monetary damages against Defendants in their official capacities are barred by sovereign immunity. Plaintiff's request for injunctive relief is barred by the *Rooker-Feldman* doctrine. Additionally, any claims for monetary damages against Defendants in their individual capacities are barred by judicial immunity. Accordingly, the complaint is dismissed in its entirety without opportunity to amend. *See Rochester Drug Co-Operative, Inc. v. Hiscox Ins. Co., Inc.*, 545 F. Supp. 3d 21, 24 (W.D.N.Y. 2021) ("Where it appears that granting leave to amend is unlikely to be productive, [ ] it is not an abuse of discretion to deny leave to amend." (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993))).

---

[7] Because the Court dismisses for lack of subject matter jurisdiction and on judicial immunity grounds, the Court does not reach Defendants' arguments with respect to service or the merits of Plaintiff's claims.

## V.      CONCLUSION

For these reasons, it is hereby

**ORDERED** that, to the extent Plaintiff seeks to proceed with claims on behalf of his children he must obtain an attorney to represent the children in this case. If a notice of appearance is not filed by counsel on behalf of M.R.M. and G.J.M. within thirty days of this Decision and Order, the claims of M.R.M. and G.J.M. will be dismissed without prejudice and this case will be closed, without further order of the Court; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 11) is **GRANTED** as to all of Plaintiff's claims: Plaintiffs' claims for monetary relief against Defendants in their official capacities are dismissed under the doctrine of sovereign immunity under the Eleventh Amendment, without prejudice but without leave to amend; and Plaintiff's claims for injunctive or equitable relief are dismissed under the *Rooker-Feldman* doctrine, without prejudice but without leave to amend; and the remaining claims against the Defendants are dismissed with prejudice because the Defendants are entitled to judicial immunity; and it is further

**ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 10) is **DENIED** as moot.

**IT IS SO ORDERED.**

Dated: October 27, 2025
         Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge

15